Good morning, and may it please the court. Okay, hang on just a second. We're waiting for the others to set up. You can't see so it's not your fault. Hang on. I'll tell you when the other side is set up.  Good morning, it may please the court. My name is Elizabeth Rodriguez and I am appearing on behalf of petitioner Miss Colleen Villavicencio. I would like to reserve two minutes for rebuttal. First, I would like to start with the claim for derivative citizenship. We argue that petitioner is a U.S. citizen because she meets the second pathway of the former 8 U.S.C. section 1432A5 under their revised rule under Shianu in that she's not required to have been granted legal permanent residency prior to the age of 18, which was what was found by the lower court in this case. Meaning the I.J.? Yes, yes, exactly. So can I ask you about this? Because you raised this issue before the I.J. The I.J. rejected it before the before the Cherno case was issued. Then you didn't raise it before the B.I.A. and you didn't raise it to us. What do we do with that? And what waiver wasn't really raised in the supplemental briefing. But why wouldn't we consider this waived? I mean, I think there's some decent arguments why we wouldn't. But I want to hear what your position would be. Yes, your honor. Well, first and when it was argued with the B.I.A. and when actually that case, this case was decided by the B.I.A. Shianu still had not been decided or at least by the time that the briefing was submitted to the board. Then, yes, it wasn't submitted here to this court. That was the same. But that was the same. The same was true before the I.J. as well. So why did you raise it at all? You clearly thought that it was colorable enough to raise before the I.J. and then you chose not to pursue it after that. Yes. At the time, I believe the case law was not in our favor. And in fact, I think at the time it was pretty clear that, you know, in the circuit that they a child had to have become prior to the 18th birthday had to become a lawful permanent resident. However, that's not the case now. So that is why I believe it wasn't raised before before the board or before the I.J. However, also the petitioner in this case initially started pro se and she did also raise it at that time. And of course, at that time, she didn't have counsel who was able to direct her into what the law was. However, again, they did raise it at a later time, even even with counsel, they did believe that it was colorable. Also, we would argue that it is not waived because derivative status and is automatic. So as long as certain conditions exist, the child does become a U.S. citizen, even if there was no request. Can I ask you about that? Because is your position then that any time a derivative citizenship claim is raised, no matter how strong it is, say, say that it was a really weak claim? Well, let's start with a frivolous claim. Well, it's a frivolous derivative citizenship claim. Would that not be waived? Well, I mean, because if anybody why couldn't anybody just come in and say, well, no, I think I have citizenship. And then and then we say, well, you didn't raise that below. And you say, well, yeah, but it would be automatic. So you've got to remand it for that. Don't I guess my question is, don't we have some duty to weigh in to the merits in some way? I don't know in what way, but don't we have some duty to weigh into the merits to determine how strong the derivative citizenship claim is to determine whether it's way? I mean, obviously, if someone comes in and says, hey, I've been granted citizenship, here's my papers. Well, that seems to be a pretty compelling reason to say, well, wait a second. I mean, hopefully the government would just agree to remand in a case like that. But, you know, so you got that on one extreme and then you've got somebody who just says. I'm not going to tell you why, but I think I'm a citizen. Where where do we are there any cases that guide us in this inquiry? Well, yes, I do believe there should be some way. And however, I think this case is different because I would say it wasn't a frivolous claim. The petitioner in this case clearly knew that her mother was a naturalized citizen. She did file her application for adjustment of status. And she didn't show up two different times. Can I sort of supplement Judge Nelson's question by looking at footnote two in the government's supplemental brief on page 10? The government says I'm just now reading from footnote two. If there is a genuine issue of material fact pertaining to petitioner's nationality, the matter should be transferred to district court. And then the government says that there's no issue of material fact. Is there an issue of material fact? And if so, if you say there is, tell me how, tell me why I should think that there is an issue of material fact. Because the government seems to have conceded if this is a debatable question, that is to say, there's an issue of material fact as to citizenship. Government says send it to the district court. So my question is, is there an issue of material fact as to citizenship? I think there would be an issue of material fact just because of what was just noted. Did she, in fact, because she left the country or because she abandoned, was that enough for... Let me do it this way. What is her claim to citizenship? What's the basis for her claim to citizenship? Her claim for citizenship is that her mother was a naturalized citizen prior to her turning 18. That she did make some objective official manifestation of permanent residence prior to the mother, excuse me, prior to herself turning 18. And that she did reside permanently here in the United States. Yes, she had left at some point. However, that does not seem to be an issue. In case law, for example, if we look at Nizazu, I'm saying it wrong, but Nizazu, and also in Romero-Reis' case, I believe in both of the cases, at some point, those petitioners had left and then they came back. That did not seem to be a determinative issue as to whether or not they were derivative citizens or not. The question really was, was there a lawful admission? So in this case, there was a lawful admission, I believe, first in 1988 when she had the border crossing card. And then, I believe later again, she was also admitted for adjustment of status. So that is why we are saying that she does qualify for derivative citizenship. Following that question leads me to ask you the question that I'm not sure that we haven't already decided this issue and we're not going to get to it. In Klamen versus Garland, our court, which we have to follow, characterized an individual who departs the United States while his adjustment of status application is pending, has abandoned. Now, why is not this characterization applicable here that it has been abandoned, so we have nothing to decide other than the petitioner leaves? So in this case, again, I think at the moment that she filed for her adjustment of status as a minor, that was enough to where she made the criteria for derivative citizenship. So at that time, we would argue that her derivative status was automatic at that time. So even if she left later, that wouldn't have mattered because that's not included in the statute. What case do you rely on that if a person leaves the country and is no longer pursuing, that automatically they win, that the board is going to say stamped good? I don't think there's a case that will support you on that. But the cases that bind us do show that if she has a petition pending and leaves the country, that we are required to come to the conclusion that it's been abandoned. Right. Well, the only case that I could point to, I believe, and I think it was actually cited by government counsel, and that was Sharma. I believe in that case, that petitioner also had left the country prior to turning 18. He had filed a parole application, but he left prior to that being granted. So he left. And in that case, I believe they found in favor of his claim. And if I could, I see that my time is almost up, if I could reserve. They found, who found? Oh, I believe it was the Ninth Circuit case. No, excuse me, that was the First Circuit case. Well, that's the First Circuit, and I'm sure the First Circuit has wonderful judges. Do we have a Ninth Circuit case to say you're out of court? We can't very well, unless we go in bank, change the rules. I can't point to a case at this time, Your Honor. And, you know, I can't make one up, obviously. So the only one I can point to as instructive is this First Circuit case. Okay, thank you for your help. Okay, let's hear from the government, and we took you over time. We will give you a chance to respond. Good morning, Your Honors, and may it please the Court, Michael Heiss on behalf of the Respondent, the Attorney General of the United States. Clearly, we're here to talk about the citizenship question and the consistent theme throughout all of the cases that have addressed derivative citizenship under the new standard, the official objective manifestation standard. The consistent theme is whether or not the individual pursued their application. Just filing the application is not enough. With respect to Sharma, the First Circuit case. Well, but, okay, so you may be right, and maybe the government ultimately wins, but obviously the BIA didn't address this issue, so we can't exactly affirm the BIA on this issue. Yes, they weren't asked to do so, as Your Honor previously noted. Well, so I'm interested in that. Let's start there. The government, in the supplemental briefing, and maybe it's our fault for not asking about the waiver question specifically, but the government didn't raise a waiver question. I believe we did cite waiver, if I remember correctly. I don't have my brief in front of me, but I'm fairly certain I cited Shanks v. Dressel's, the case I always cite for waiver, page 8 of my brief, I believe. Okay, so you do think this was waived then, and the reason you think it's waived is because there's no material dispute. Well, right. Petitioner's only response regarding the material factual dispute is actually a legal question, whether or not her departure constitutes an abandonment. And we have more than that here that hasn't really been discussed. Your Honor mentioned that she failed to appear twice for fingerprinting. And, again, that gets back to the theme. Yeah, but that seems like a factor that may weigh against her but isn't dispositive. I guess now I'm intrigued by the, you know, leaving the country. Judge Wallace cited that prior Ninth Circuit case. Is the government's understanding of the law in the Ninth Circuit the same? It's actually the regulation. It's 8 CFR 245.2. Well, but the First Circuit, whatever the regulation says, the First Circuit seems to have come to a different conclusion. Well, I haven't read the First Circuit case. Well, that's important because, unfortunately, Petitioner's counsel is incorrect. Sharma did not prevail. Sharma was found to have not pursued his application, in part because he failed to appear for his interview and failed to pursue the application. In all the other cases, the issue is whether or not the individual was pursuing the application. And as this Court pointed out, in Cheneau, Romero Ruiz would not qualify because he departed. He also had entered illegally. The Fifth Circuit in Gonzales, his father had obtained an approved I-130 for Gonzales, but he didn't apply to adjust status until after turning age 23. Now, in Mwazuzu, the Second Circuit did have to tackle the effect of a departure and seemed to have excused it, but, again, Mwazuzu continued to pursue the application. But back to this Court's standard from Cheneau, again, they pursued their application. The application had been timely filed. Right. Cheneau doesn't address this question. Cheneau says you don't have to be granted legal permanent status, but it doesn't address this separate question about whether leaving the country. What does that mean? If you leave for a week, it's over? That's possible. I mean, by regulation, it's true. But don't we have to decide? If we're going to reject this claim, don't we have to decide that it's absolutely clear? I mean, this gets back to my question before, which is you've got a range of possibilities. If there's any chance that she could be given derivative citizenship, don't we— not to allow, I guess, a district court to decide that question? For the district court to need the opportunity to address this question, there needs to be a material question of fact. And the only question, Petitioner— So isn't there still a material question of fact how long she was gone and whether it constituted—whether it was enough to satisfy the regulation in prior Ninth Circuit law that she abandoned her claim? Simply departing by regulation is enough. And I didn't catch the case that Judge Wallace cited, but that is correct. Departing the United States while you have an adjustment application pending is automatic. That's automatic. Abandonment. Even if it is to visit a sick relative and come back the next day? The individual needs to obtain advance parole before departing the United States. And we have the option. And if they don't obtain advance parole, that's abandonment? Yes. That's 8 CFR 245.2 A4 IIB, which was cited in our supplemental brief. That's automatic, and that's consistent with this court's case law on point. That may seem harsh, but, again, these individuals are seeking the grace of the Attorney General to remain here legally in the United States, and that requires following through. Your position is, and I've got to look at that a little more closely, but your position is that's automatic. That's not discretion. It's not a factor that weighs in. It's a shall. It can't be waived. It must be able to be waived. Yes, it can be waived, Your Honor. And that's what happened in Mouazouzou and has happened before. It happened here. This individual was paroled back into the United States, was placed into removal proceedings as a result of a 2001, I believe that was her theft conviction. Those proceedings were terminated so she could apply or continue to pursue her Adjustment of Status application. She failed to do so, failed to show up for the interview. I think that was the second interview she failed to show up for. She was placed in proceedings again. Those proceedings were again terminated so she could pursue Adjustment of Status, and she didn't, and that's consistent with what this court looks at in these cases is the totality of everything. Does she say she didn't receive service on a couple of these? I've never seen anything of that sort. She actually said nothing other than admitting to have failing to appear for the interview. She provides no statement of that sort. That's what happened in Chennault is he didn't get notice of the interview and thus failed to appear for it. But critical there is they continue to pursue the application. And what we have here is simply a massive gap of time where she did nothing. Well, it is unusual. Aren't we talking about 20-plus years and nothing was done? So I give you that. But let me ask you, if she hadn't left the country, would the government be making the same argument? Or would you say, hey, then there is a material issue and the district court would need to resolve it? Her failure to appear for the interviews would be enough. Okay, so you think her leaving the country is enough on its own. You think failing to appear for the interview is enough on its own. I know it's enough to deny it, but is it enough to require denial? Again, the court is – She's going to lose if we send this back to the district court. I get your position on that. What I'm trying to figure out is what do we do with this? Because this is a different ballgame. I mean, when you're talking about a potential for derivative citizenship, that seems to put this in a different camp than a lot of other issues. Absolutely, absolutely. And to follow up on that, one of the basic problems I have here is you're asking us, in a sense, to decide the citizenship question when it's hardly been argued. There's very little in front of us. It comes up here at the last minute. I think it can come up here at the last minute. But frankly, I don't know a lot about the merits and demerits of the citizenship claim. It does not seem to me to be entirely frivolous. Entirely frivolous? No, the government is certainly not claiming this as frivolous. The question is, is there a material question of fact? And the petitioner hasn't disputed any of the facts. There's really no facts in question here. There's an individual that applied for adjustment of status prior to turning 18, reentered the country for the express purpose her parole was to. Is the record clear on how long she left the country and when it happened? Or the frequency. But ultimately that doesn't matter because it gets back to the totality of the circumstances. The departure by itself, leaving for a day by regulation would be enough. But again, the agency can consider that. But I think you just told us that you originally said categorically leaving, that's the end of it. And then you said, oh, but that can be waived. And, indeed, this case was waived. It can be resurrected. Yeah, so the factual circumstances may be quite relevant. Failing to appear for the interviews twice takes this out of that being the sole issue. Yeah, I understand that's what you say. Again, it's the totality of the circumstances. The departure itself is going to be relevant. But you're saying failure to appear, you're now arguing legal consequence. You're not telling me about the factual disputes. There are some factual issues in terms of how long she was away. Is it a material factual dispute? Yeah, I mean, that's the question. Right. It's immaterial given the totality. If the court wants to discard the departure as a reason for denying this, the court can do so because, and the government would still be correct, because of the two failures to appear for interviews and the massive gap of time after that. Failing to raise it before the board, that's further evidence of failing to pursue citizenship. Failing to raise it here. The court raised this question. And do we know the reasons why she failed to appear? She hasn't said. I know she had certain convictions that might have prevented her from doing so, but she hasn't. She didn't raise that. This court directly asked Fishner what material facts are in dispute, and the only thing she raised is a legal question. The legal impact of her departure from the United States has said nothing about the failure to appear for these two interviews. The court has no further questions. Any further questions from the panel? Okay. Thank you. Thank you, Your Honors. But let's put a minute on the clock for rebuttal. Ms. Rodriguez? Yes, Your Honors. So we would just briefly argue there is issue of material fact, as Your Honors previously noted, of whether there was any notice. How long was she outside of the country? Also, as, again, you – What does the record say about that right now, or does it not say anything? It does not say anything. However, as we know, there can be many reasons why a person does not appear to an interview. People move, they get lost. And the IJ didn't address this question because it rested solely on the failure to have lawful permanent status. Is that correct? Right. Yes, that's correct. Also, I would note that these issues are really not something that have been considered, whether a departure or failing to appear would necessarily kill this type of claim. In fact, in Shianu, I would note that the court does not address whether Romero Ruiz's departure would have any effect on whether he derived citizen or not. It was all essentially based on, again, the legal admission. And I see my time is up, and so I would submit. Could I intercede? I'd like to see your response to the question I was facing on the unpronounceable v. Garland case. That, in fact, was an en banc case. And we not only don't follow the Second Circuit, we can't follow even the three judgments once it's en banc. And I don't understand how we can distinguish that case, the application of that case under this circumstance. So I wanted to give you a chance to tell me why I should. And excuse me, you said the Sharma case, right? Yes. Okay. So the big difference in that case is that in that case, the petitioner entered the U.S. as a child with no lawful immigrant status, which is different from here. So there was no lawful admission. So the court there noted that the pivotal question is whether Sharma, after his mother's naturalization, began to reside permanently in the United States under the age of 18. So we are saying that that is the case here. But that sort of waives the point. They're saying there's a waiver, automatic waiver, that takes place. He's out of court as soon as he leaves. If I understand correctly, the case. So that there are different facts doesn't mean that we can distinguish the case. We have to distinguish the principle that's laid down by the en banc court. Well, Your Honor, I mean, I would also note that in that case, the petitioner didn't make any attempt to revive his application. So really, I mean, I think he didn't even try to file an adjustment of status until he was the age of, I believe it was 23. So, you know, that's different also here because she, you know, she had multiple instances where she tried to revive her application. That's your best argument to distinguish the en banc case?  Okay, thank you. We wanted to give you a chance. Thank you. Okay, thank both sides for their help for arguments in this case. Now submit it for decision.
judges: WALLACE, FLETCHER, NELSON